# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| FREDRICK PERKINS,<br><br>　　　　Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | No. C22-4060-LTS<br>(Crim. No. CR18-4014-LTS)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

　　　　This matter is before me on Fredrick Perkins' pro se motion (Doc. 1) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Perkins' prior attorneys filed court-directed responses (Docs. 5, 6) and the Government filed a response (Doc. 10) to Perkins' motion. Perkins also filed a pro se reply (Doc. 11).

## I.　　BACKGROUND

　　　　The events leading to this case were summarized as follows in the presentence investigation report (PSR):

> On January 31, 2018, law enforcement utilized a confidential informant ("CI") to purchase approximately 9.2 grams of suspected marijuana from the defendant for $100 while at the defendant's residence located at 616 26th Street in Sioux City, Iowa.
>
> 　　　　　　　　　　　　　* * *
>
> On February 1, 2018, law enforcement executed a search warrant at the aforementioned residence. The defendant, his girlfriend – Paris Boddie, and four children were identified as being inside the residence. The defendant was taken into custody and law enforcement conducted a post-*Miranda* interview with him. The defendant reported that there were no firearms in the residence, but stated that anything illegal belonged to him and not to his girlfriend. Law enforcement also conducted a post-*Miranda* interview with Boddie, who also resided at the residence with the defendant.

> Boddie reported that there was a firearm in the master bedroom closet, inside of the door to the attic. Boddie advised that she did not want to answer questions about who had purchased the firearm.
>
> \* \* \*
>
> During a search of the residence, law enforcement seized a Smith & Wesson 9 mm semi-automatic pistol that was loaded with 17 rounds of 9mm ammunition. The pistol was located on a shelf in the closet in the master bedroom, which was shared by the defendant and Boddie. Record checks revealed that the pistol had been reported as stolen from a residence in Sioux City, Iowa. Law enforcement also seized the following items from the master bedroom: a large baggie that contained six, one-ounce baggies that contained suspected marijuana; $2,114 in cash, which included $100 that had been used in the previously noted controlled drug transaction; five, two-gram baggies of suspected marijuana; two, one-half pound baggies of suspected marijuana; and additional baggies of suspected marijuana in quantities that ranged from two grams to one-half pound each. One of the small quantities of marijuana was located in the bookbag of a 13-year-old juvenile who was residing at the residence. Law enforcement also seized five 9mm rounds of ammunition and one .22 caliber round of ammunition from the area of the stairway to the basement of the residence.
>
> \* \* \*
>
> The defendant was then arrested for state charges related to the instant offense. During a subsequent post-*Miranda* interview with law enforcement, the defendant reported that the seized 9mm pistol belonged to him and described where it had been located, which was consistent with where law enforcement had seized the pistol. The defendant stated that he had purchased the firearm from "Stefon" for $240 a few months prior because he "feared for his family's safety." The defendant advised that he sold marijuana for profit. Boddie also spoke with law enforcement following the search of the residence. Boddie stated that she had purchased the firearm from "Stefon," both she and the defendant were present when they had purchased the pistol, and they had both handled the pistol at the time of the purchase.

Crim. Doc. 66 at 4-5.

On April 24, 2018, Perkins was charged in a four-count indictment (Crim. Doc. 1) with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count 1); distribution of a controlled substance in violation of 21 U.S.C. §§

802(13), 814(a)(1), 841(b)(1)(D) (Count 2); possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 802(13), 841(a)(1), 841(b)(1)(D) (Count 3); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4).  On May 20, 2019, he pleaded guilty to Count 4 pursuant to a plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  Crim. Docs. 55, 56.  The agreement provided that Perkins would be sentenced to a term of imprisonment of 165 months and 60 months of supervised release if I accepted the agreement.  On October 3, 2019, Perkins filed a motion (Crim. Doc. 72) to discharge counsel, stating that he was aware of an upcoming law that would disqualify him as a career offender, and he could not get in touch with counsel to discuss withdrawal of his guilty plea on this basis.  After a hearing on the motion, the court appointed Stuart Dornan as new counsel.  Crim. Docs. 74, 75.

On June 16, 2021, Perkins filed an amended motion (Crim. Doc. 91) to withdraw from the plea agreement or to request that the court reject the plea agreement based on passage of Illinois House Bill 1438, which had gone into effect on January 1, 2020.  Pursuant to the new law, two of Perkins' prior convictions were expunged – a 2010 possession of a cannabis conviction and a 2012 manufacturing and delivery of cannabis conviction.  The manufacturing and delivery conviction had been identified as a career offender predicate offense in Perkins' presentence investigation report (PSR).  *See* Crim. Doc. 66 at ¶ 27.  The Government resisted the motion.  Crim. Docs. 91, 92.

On August 25, 2021, I denied Perkins' motion to withdraw from the plea agreement.  Although his Illinois convictions had been expunged under a recent Illinois statute, they still qualified under federal law as predicate offenses for the career offender enhancement based on *United States v. Townsend*, 408 F.3d 1020 (8th Cir. 2005).  Crim. Docs. 99, 116 at 32-34, 37.  I accepted the Rule 11(c)(1)(C) plea agreement and therefore sentenced Perkins to 165 months' imprisonment with five years of supervised release.  Crim. Doc. 100.  Perkins appealed (Crim. Doc. 104) but his appeal was denied based on

the appeal waiver in the plea agreement. Crim. Docs. 119, 120. His petitions for rehearing by the panel and rehearing en banc were denied on July 28, 2022. Crim. Doc. 121.

Perkins signed the present motion on October 24, 2022, and the court received it on October 31, 2022. Doc. 1. He also filed a pro se motion (Doc. 2) to appoint counsel and pro se correspondence (Doc. 3). On August 2, 2024, I entered an order (Doc. 4) pursuant to Rule 4 of the Rules Governing 28 U.S.C. § 2255 Cases in which I ruled that his motion was timely but dismissed two of Perkins' claims as foreclosed by the plea agreement and dismissed a third as patently frivolous. I concluded his motion could be interpreted as raising a fourth claim of ineffective assistance of counsel during plea negotiations and allowed that claim to proceed. Doc. 4. I directed responses from Perkins' prior counsel and the Government.

On August 29, 2024, Dornan filed a response (Doc. 5) to Perkins' allegations. Dornan represented Perkins as court-appointed counsel from October 11, 2021, until August 3, 2022, and had no involvement in the plea negotiations. Doc. 5. Perkins' prior attorney, Patrick Parry, also filed a response (Doc. 6) to Perkins' claim. He represented Perkins as court-appointed counsel from February 8, 2019, through October 11, 2019, and was Perkins' attorney when the plea agreement was signed. Doc. 6. The Government filed a response (Doc. 10) to the motion and Perkins filed a pro se reply (Doc. 11).

The matter is now fully submitted. I find that neither oral argument nor an evidentiary hearing are necessary.

4

## II. LEGAL STANDARDS

### A. *Section 2255 Standards*

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

5

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

### B.    *Ineffective Assistance of Counsel Standards*

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is, conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. When evaluating ineffective assistance claims, a court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" to which a criminal defendant is entitled. *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) (citation omitted). Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v.*

6

*United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Because a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining Strickland prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

### III. DISCUSSION

As explained in my initial review order (Doc. 4), the only remaining claim is ineffective assistance of counsel during the plea negotiations. Perkins contends that his 2012 Illinois drug conviction, which was identified as a career offender predicate offense,

should have been considered as expunged when negotiating the plea because that was the ultimate result of the passage of the Illinois Cannabis Regulation and Tax Act.

An examination of the timeline of that legislation and of Perkins' criminal case is helpful in determining what Perkins' counsel knew or should have known during the plea negotiations. Perkins was indicted on April 24, 2018. The plea offer that Perkins ultimately accepted was dated February 5, 2019. Crim. Doc. 56. According to Parry's affidavit, the initial plea offer contemplated a stipulated sentencing range of 120 to 262 months' imprisonment pursuant to Rule 11(c)(1)(C). Doc. 6. This was based on Perkins likely being scored as a career offender with a range of 262 to 327 months. *Id*. Parry states that Perkins wanted the Government to agree to a specific number rather than a range and Parry communicated as such to the Government. The Government offered 165 months and rejected other proposals from Perkins. *Id*. By May 6, 2019, the Government indicated that the plea offer set forth in the February 5, 2019, letter, with the modification of an agreed 165-month sentence, would expire on May 9 at noon. Perkins signed the plea agreement with the stipulated 165-month sentence on May 8, 2019. Perkins filed his notice (Crim. Doc. 50) of intent to plead guilty on May 9, 2019, and appeared in court to plead guilty to Count 4 of the Indictment on May 20, 2019. Crim. Doc. 55.

On May 31, 2019, the Illinois Assembly passed the Illinois Cannabis Regulation and Tax Act. The bill was signed into law on June 25, 2019, and went into effect on January 1, 2020. Parry states while he was aware the Illinois Assembly was considering legalizing marijuana prior to the May 20, 2019, plea hearing, it was unclear whether the law would be approved and what the final version of the bill would include. Doc. 6. He notes that a similar bill had previously been proposed in 2017, but had failed to pass. *Id*. Perkins argues his counsel should have known and advised him of the likelihood of the expungement of the 2012 Illinois marijuana conviction. Doc. 9. He asserts that without the career offender classification, he would have faced a mandatory minimum sentence of 60 months.

8

The Government argues that under Eighth Circuit case law, the expungement by the State of Illinois of Perkins' Illinois marijuana conviction had no effect on application of the career offender enhancement because the conviction was not "reversed or vacated due to legal errors or later-discovered evidence exonerating the defendant" or "ruled constitutionally invalid." *Townsend*, 408 F.3d at 1023 (citing United States Sentencing Guidelines § 4A1.2 comment (n.6)). In *Townsend*, the court emphasized that "[f]ederal law, not state law, determines whether a prior sentence is counted for criminal history purposes." *Id.* at 1024 (citing *United States v. Morgan*, 390 F.3d 1072, 1074 (8th Cir. 2004)). In determining whether a conviction is "expunged" under the Guidelines, *Townsend* instructed that the court must examine the "basis" for the expunction. *Id.* While it observed the Guidelines do not expressly define the term "expunged," under section 4A1.2(j), expunged convictions appear to be those (1) reversed or vacated due to legal errors or later-discovered evidence exonerating the defendant, or (2) ruled constitutionally invalid. *Id.* at 1023. The Eighth Circuit relied on this same test in a subsequent case. *See United States v. Jepsen*, 944 F.3d 1019, 1023 (8th Cir. 2019) (holding that a prior judgment and sentence that had been declared "void and vacated" by a state court still qualified as a prior offense because the subsequent modification was not based on "constitutional invalidity, trial error, or actual innocence").

I relied on *Townsend* at Perkins' sentencing, during which his counsel (Dornan) argued against application of the career offender enhancement:

> I do find under *United States* versus *Townsend*, 408 F.3d 1020, Eighth Circuit 2005, that Illinois's decision for public policy reasons to expunge the conviction in paragraph 27 is not binding on the federal court and that I still have to consider the conviction in paragraph 27 for purposes of applying the federal sentencing guidelines because the expungement did not occur due to constitutional invalidity, innocence, or mistake of law. Instead, the expungement occurred not because the conviction never should have happened or was invalid when it actually did happen but because Illinois has made a change of policy to decide that such convictions no longer count for purposes of Illinois law.

9

Crim. Doc. 116 at 32-33. As such, I concluded that Perkins' Illinois marijuana conviction remained a valid conviction for purposes of applying the federal sentencing guidelines and that the career offender guidelines therefore applied as the parties had anticipated in the plea agreement. *Id.* at 33. Ultimately, I accepted the plea agreement and sentenced Perkins to the 165-month sentence.

Based on the timeline and existing Eighth Circuit case law, Perkins cannot establish either deficient performance or prejudice as to his ineffective assistance of counsel claim. There was no deficient performance, as the marijuana legalization bill had not been passed by the Illinois Assembly at the time the parties were in plea negotiations. The Government had imposed a deadline to accept or reject the plea nearly three weeks prior to the bill's passage. Counsel cannot be faulted for failing to anticipate a change in the law. *See Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014) ("Our cases make clear that counsel's failure 'to anticipate a change in the law' does not constitute ineffective assistance.'").

Even if counsel had anticipated this change in Illinois law and failed to discuss it with Perkins, it would not have affected the application of the career offender guidelines based on Eighth Circuit law (*Townsend*). *See Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002) ("counsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance"). Thus, Perkins cannot demonstrate prejudice. *See United States v. Luke*, 686 F.3d 600, 604 (8th Cir. 2012) ("To establish prejudice, the defendant must demonstrate a reasonable probability that the result of the proceeding would have been different, but for counsel's deficiency."). The expungement had no effect on the calculation of Perkins' guideline range, meaning that the parties accurately contemplated the career offender guidelines when they negotiated the plea agreement. For these reasons, Perkins' ineffective assistance of counsel claim fails as a matter of law.

## IV. CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find that Perkins failed to make the requisite "substantial showing" with respect to any of the claims raised in his § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, a certificate of appealability will not issue. If he desires further review of his § 2255

11

Case 5:22-cv-04060-LTS-KEM    Document 12    Filed 04/10/25    Page 11 of 12

motion, Perkins may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## V. CONCLUSION

For the reasons set forth herein,

1. Perkins' motion (Doc. 1) pursuant to 28 U.S.C. § 2255 is **denied** as to all claims and this action is **dismissed with prejudice**.
2. The Clerk of Court shall **close this case**.
3. A certificate of appealability will **not issue**.

**IT IS SO ORDERED** this 10th day of April, 2025.

_____
Leonard T. Strand
United States District Judge